IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMMY L. LINDSEY, | : | |
|     Petitioner, | : | 1:16-cv-2190 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| PA BOARD OF PROBATION/ | : | |
| PAROLE, PA STATE ATTORNEY | : | |
| GENERAL, | : | |
|     Respondents. | : | |

**MEMORANDUM**

**August 23, 2018**

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), filed by Petitioner Jimmy L. Lindsey (Petitioner or Lindsey), wherein Lindsey challenges the 2015 and 2016 denials of parole by the Pennsylvania Board of Probation and Parole ("the Board"). The petition is ripe for disposition. For the reasons set forth below, the Court will deny the petition.

**I.    Background**

Following a 1992 jury trial in the Court of Common Pleas of Columbia County, Bloomsburg, Pennsylvania, Lindsey was convicted of five counts of forcible rape of three different University of Bloomsburg female students, two counts of involuntary deviate sexual intercourse, and one count of burglary. (Doc. 6-1, pp. 13-15, 21). During his April 21, 1995 sentencing, he maintained his innocence stating "I believe from watching throughout the trial that each victim

knows that I am not their attacker. I think they have a gut feeling that I am not their attacker. And, I think that is backed up and I think that is proven by their statements, and their testimony, and their description of their attacker which doesn't fit me. I think what happened was that they were bombarded with a bunch of insignificant evidence that could have fit anyone. It just happened that I am the person that the evidence was supposed to fit." (Doc. 61, p. 4). The prosecution rebutted Lindsey's statements by pointing out that "[t]he evidence was overwhelming and in the most part uncontested. The Defendant has admitted his culpability to a witness who testified. And, his blood matched the sperm that was found in all three victims through DNA testing. The evidence was overwhelming and that explains the swiftness with which the verdict was reached by the Jury." (*Id.* at 11). The Court of Common Pleas of Columbia County sentenced Lindsey to twenty-two to forty-four years of incarceration. (Doc. 6-1, 2-18). He reached his minimum date on April 10, 2015. (Doc. 6-1, p. 21). He will reach his maximum date on April 10, 2037. (*Id.*)

He has twice been denied parole. The first denial took place on May 6, 2015. The Board stated the following:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Board of Probation and Parole, in the exercise of its discretion, has determined at this time

2

that: You are denied Parole/Reparole. The reasons for the Board's decision include the following:

YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.

YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

YOUR REFUSAL TO ACCEPT RESPONSIBILTY FOR THE OFFENSE(S) COMMITTED.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

YOU ARE TO BE REVIEWED IN OR AFTER AUGUST 2016.

AT OUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

> WHETHER YOU HAVE SUCCESSFULLY PARTICIPATED IN A TREATMENT PROGRAM FOR SEX OFFENDERS.
>
> WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.
>
> WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD.
>
> WHETHER YOU HAVE COMPLETED THE DEPARTMENT OF CORRECTIONS PRESCRIPTIVE PROGRAM(S).

(Doc. 2, p. 15; Doc. 6, p. 2).

The most recent denial occurred on July 29, 2016. (Doc. 6-2, p. 3).

Following an interview with you and a review of your file, and having considered all matters required pursuant to the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: You are denied Parole/Reparole. The reasons for the Board's decision include the following:

YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF RISK TO THE COMMUNITY.

REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.

YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

YOU ARE TO BE REVIEWED IN OR AFTER JULY 2018.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

> WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.
>
> WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD.
>
> WHETHER YOU HAVE COMPLETED THE DEPARTMENT OF CORRECTIONS PRESCRIPTIVE PROGRAM(S).

(Doc. 2, p. 17; Doc. 6, p. 3).

In the instant petition, Lindsey raises an *ex post facto* claim, and asserts due process and equal protection violations. (*Id.* at pp. 1-12).

## II. Discussion

### A. Exhaustion

A federal court may not entertain the merits of a petition for writ of habeas corpus unless available state court remedies have been exhausted. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999). In order to exhaust a claim "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," thereby affording the state courts the opportunity to address the claims in the first instance. *Id.* at 844-45; *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The habeas petitioner bears the burden of proving exhaustion of all available state remedies. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

#### 1. *Ex Post Facto Claim*

A claim that the Board violated the *ex post facto* clause in the course of denying parole is cognizable in Pennsylvania state courts, beginning with a petition for writ of mandamus in the original jurisdiction of the Commonwealth Court and followed by an appeal to the Pennsylvania Supreme Court. *Parker v. Kelchner*,

429 F.3d 58, 61-64 (3d Cir. 2005); *Long v. Pennsylvania Bd. of Prob. and Parole*, 227 F.App'x 190 (3d Cir. 2007); *Cimaszewski v. Pa. Bd. of Prob. and Parole*, 868 A.2d 416 (Pa. 2005). Therefore, such claims must be exhausted before they are properly raised in federal habeas proceedings. *Parker*, 429 F.3d at 61–64.

Respondents contend that Lindsey failed to exhaust his *ex post facto* claim in that he did not challenge either of the Board's parole denials in state court. He does not dispute this contention and does not argue that to do so would be futile. (Doc. 7, pp. 3, 4). And he is now in procedural default for failure to comply with the state filing requirement. *See Coleman*, 501 U.S. at 735 n.1. Specifically, any challenge to the 2015 and 2016 parole denials are now time-barred under state law, as the time for filing a petition for review with the Commonwealth Court has expired. *See* PA. R.A.P. 903(a) (stating that notice of appeal shall be filed within thirty (30) days after the entry of the order from which the appeal is taken). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (quoting *Coleman v. Thompson*, 501 U.S. 722 (1991)). Federal courts may not consider the merits of such claims unless the applicant establishes "cause and prejudice" or a

6

"fundamental miscarriage of justice" to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless v. Vaughn*, 172 F.3d 255, 260 (1999).

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993). In order to demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent of the crime by presenting new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298 (1995); *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).

Lindsey has not established sufficient cause for his default or demonstrated actual prejudice that would justify overlooking his procedural default. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002). Nor is there any indication that a failure to review his claim will result in a fundamental miscarriage of justice. As Lindsey failed to use the available state court remedy, he cannot now assert his *ex post facto* claim for the first time on federal habeas review. *Parker*, 429 F.3d at

61–64. Accordingly, Lindsey's *ex post facto* challenge to the Board's decisions will be dismissed for failure to exhaust available state court remedies.

        2.      <u>Due Process and Impermissible Bias Claims</u>

A state prisoner challenging the denial of parole on constitutional grounds, other than for violation of the e*x post facto* clause is not required to exhaust state court remedies before pursuing federal habeas review. *Defoy*, 393 F.3d at 445. Accordingly, these claims will be addressed on the merits.

    **B.**    **Merits Analysis**

        1.      <u>Due Process Claim</u>

Lindsey initially argues that the Board has no legal authority to deny parole because the state court's sentence did not specifically grant the Board such power. (Doc. 7, p. 4). Pennsylvania law grants the Parole Board vast discretion to refuse or deny parole, *see* 61 PA.C.S. § 6137; the courts have affirmed the Board's complete discretion. *See, e.g., Rogers*, 724 A.2d at 319; *Reider v. Commw. Pa. Bd. of Prob. & Parole*, 100 Pa. Cmwlth. 333, 514 A.2d 967, 971 (Pa. Cmwlth. Ct. 1986). Therefore, Lindsey's argument that the Board has no legal authority to deny parole is wholly lacking in merit. (Doc. 7, p. 4).

            *a.*      *Procedural Due Process*

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether there exists a state interference with a liberty or property interest. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571). Second, if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

It is well-established that "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Nor does is there any right to parole release rooted in Pennsylvania law. *See Weaver v. Pennsylvania Bd. of Prob. & Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997) (finding that under Pennsylvania law, parole is a favor, and the prisoner has no protected liberty interest in being released before a legitimately imposed sentence has expired). *See also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (parole is not a constitutionally protected liberty interest under Pennsylvania

law); *Rauso v. Vaughn*, 79 F. Supp. 2d 550, 552 (E.D. Pa. 2000); *Rogers v. Pa. Bd. of Prob. & Parole*, 555 Pa. 285, 724 A.2d 319 (1999). While "states may under certain circumstances create liberty interests which are protected by the Due Process Clause," *Sandin v. Conner*, 515 U.S. 472 (1995), the Pennsylvania Supreme Court has long held that the denial of parole does not implicate a constitutionally protected liberty interest because parole is a discretionary matter, granted to a prisoner who has demonstrated the ability to function in society as a law-abiding citizen. *Coady v. Vaughn*, 770 A.2d 287 (2001); *Rogers*, 555 Pa. 285, 724 A.2d 319. Absent the creation of a liberty interest in parole, the Board's decision to deny parole does not create any procedural due process protections.

     b.  *Substantive Due Process*

Lindsey contends that the Board denied parole in 2015 and 2016 for "arbitrary, capricious, and unconstitutionally impermissible reasons." (Doc. 2, p. 7). Lindsey identifies the "unconstitutionally impermissible reasons" as the *ex post facto* violation. For the reasons set forth *supra*, any claim concerning the *ex post facto claim* cannot proceed. He states that the "arbitrary and capricious reasons for denying parole were: failing to prescribe a corrective process that will give Plaintiff the chance to make parole." (*Id.*)

A federal court's review of a state parole board decision is limited to an abuse of discretion inquiry. *Block v. Potter*, 631 F.2d 233, 235 (3d Cir. 1980). Specifically, the state may not deny parole on unconstitutionally impermissible grounds, such as race, religion, ethnicity, or retaliation for exercising constitutional rights. *Morrissey v. Brewer*, 408 U.S. 471 (1972). "When the Parole Board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence, it transgresses the legitimate bounds of its discretion." *Block*, 631 F.2d at 237. The Third Circuit has stressed that a substantive due process claim based upon alleged arbitrary and capricious actions is not easily mounted because the relevant level of arbitrariness required involves not merely action that is unreasonable, but rather, something more egregious, at times "conscience shocking." *Hunterson v. DiSabato*, 308 F.3d 236, 246-47 (3d Cir. 2002); *see also Evans v. Secretary, Pa. Dep't of Corrs.*, 645 F.3d 650, 659 (3d Cir. 2011). Conduct that shocks the conscience "encompasses only the most egregious official conduct." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010). *See also Hunterson*, 308 F.3d at 246-47.

Pennsylvania law imposes on the Board a duty to investigate any person whom the Board is give the power to parole and states that the Board shall consider the following factors in its determination:

(1) The nature and circumstances of the offense committed.

(2) Any recommendations made by the trial judge and prosecuting attorney.

(3) The general character and background of the inmate.

(4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 PA.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.

(5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).

(6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.

(7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

61 PA.C.S. § 6135.

The Board's rationales for denying Lindsey parole in 2015, and 2016, were not the result of some arbitrary basis such as "race, religion, political beliefs, or ... frivolous criteria with no rational relationship to the purpose of parole...." *Block*, 631 F.2d at 235. Rather, the Board denied parole on both occasions following an interview with Lindsey, after reviewing his file, and in consideration of the matters

set forth in the relevant state statute. The decisions applied legitimate factors, such as Lindsey's needs assessment, reports, evaluations and assessments indicating his level of risk to the community, his "minimization/denial" of the nature and circumstances of the offenses committed, his refusal to accept responsibility and his lack of remorse for the offenses committed. (Doc. 2, pp. 15, 17; Doc. 6, pp. 2, 3).

Although Lindsey disagrees with the Board's decisions, he has failed to direct the Court to any factor relied upon by the Board that could be described as "conscience shocking," or that any factor that could be construed as behavior intended to injure him in a way that is not justified by any legitimate government interest. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (finding that it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole."); *Prevet v. Barone*, 428 F. App'x. 218, 220 (3d Cir. 2011) (determining that a negative recommendation from the Pennsylvania Department of Corrections is a legitimate penological concern); *Gordon v. Wenerowicz*, 2011 WL 5509538, at *4 (M.D. Pa. Nov. 10, 2011) (denying parole because petitioner poses a risk to the community is not "conscience shocking."). Significantly, "[f]ederal courts are not authorized by the due process clause to

second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady*, 251 F.3d at 487. There is clearly some basis for the Board's May 6, 2015, and July 29, 2016, decisions. Consequently, Lindsey's substantive due process claim will be denied.

        2.      <u>Equal Protection Claim</u>

Lindsey also claims that the Board's denial of parole violates his equal protection rights in that the Board is "impermissibly biased against sex offenders." (Doc. 2, p. 9; Doc. 7, p. 5). The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985). Notably, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed*, 404 U.S. 71, 75 (1971). It "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir.1996)

(quoting *City of Cleburne*, 473 U.S. 432); *see also Kuhar v. Greensburg–Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir.1980) (stating that "[a]n equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved. Lindsey's claim does not involve a classification based on race, religion or national origin. The Equal Protection Clause does not afford heightened scrutiny to a classification based on a petitioner's crime. *Chapman v. United States*, 500 U.S. 453, 465 (1991). *See also Artway v. Attorney General of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996) (refusing to find that a distinction drawn between "compulsive and repetitive" sex offenders and other sex offenders received heightened scrutitiny.). Accordingly, Lindsey's equal protection claim does not call for heightened scrutiny. The sex offender classification, therefore, "is subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440, 105; *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 423 (3d Cir. 2000).

It has been recognized by the United States Supreme Court and the United States Court of Appeals for the Third Circuit that the different treatment afforded to sex offender is the result of special public safety and rehabilitative requirements being placed on those inmates due to the nature of their crimes and the need for acceptance of responsibility, treatment which is rationally related to legitimate penological objectives of public safety and rehabilitation. *McKune v. Lile*, 536 U.S. 24, 33 (2002) (recognizing that that requiring a sex offender to admit his or her guilt during the course of a treatment program removes a principal impediment to successful therapy); *Newman*, 617 F.3d at 781. In light of the nature of his convictions and his refusal to accept responsibility at his sentencing, the Board's consideration of participation in a sex offender treatment program, and acceptance of responsibility was entirely appropriate and rationally related to a legitimate penological interest. Further, the Board's decisions denying parole listed reasons grounded in the Board's legitimate discretion, applying the legitimate factors set forth in the applicable statute. Lindsey has failed to demonstrate that he is entitled to habeas corpus relief under the Equal Protection Clause.

### III. **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order

16

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Lindsey fails to demonstrate that a COA should issue.

    The denial of a certificate of appealability does not prevent Lindsey from appealing the order denying his petition so long as he seeks, and obtains, certificate

of appealability from the Third Circuit Court of Appeals. *See* FED. R. APP. P. 22(b)(1).

## IV. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order will issue.